19-3783, District of Minnesota, Thomas Lissick v. Andersen Corporation. All right, Mr. Sheik, you may proceed. Thank you, Your Honor. Good morning. My name is Jeff Sheik. I'm representing Mr. Lissick in this matter. This case, if the court's reviewed, it basically comes down, and I'd like to focus on claims relating to the whistleblower statute under state law, the sexual harassment under state law for retaliation, and the Family Medical Leave Act for retaliation. Mr. Lissick worked for Andersen Company for approximately 18 years. He does not dispute the fact that he did have two prior incidences relating to lockout-takeout procedures. It's the third incident, which is at issue, and it's our position that he has created genuine issues of material fact, and that the court should allow him to go to jury on these facts. The whistleblower claim is the result of an incident that he reported on about September 14th, 2017. Essentially, his accusations were in fact supported by the evidence, and there were nude pictures being sent back and forth. So it's our position that that's sexual harassment, and that shortly thereafter, on January 3rd, he was put on notice for leave and ultimately terminated on January 11th, 2018. Counsel, does the record reflect, did your client actually receive those pictures? He denied that he actually received them, so he did not actually receive those pictures. He just knew of them. Well, and was it the situation addressed rather quickly by the company? I mean, yes, it was, but I mean, he actually reported approximately 11 employees. They were all brought in under an investigation and basically all knew that it was Lissick that was reporting that. So it's our position that that was retaliation for him reporting those accusations of texting nude pictures of women. Could I follow up on this? I think you're talking about the hostile work environment claim. So I want to ask you if there's a statute of limitations problem. The practices ended, according to my notes, on September 6th, 2017, and the complaint wasn't filed until a year and 12 days later on September 18th, 2018. So is that hostile work environment part of the claim? Is that untimely? And if not, why? So it's our position that it is timely. I refer the court to Green v. Brenner, which is 136 Supreme Court 1769. That's a 2016 decision. And then also there's a state case called Turner v. IBS Financial, which is 471 NW 2nd 105, which is a Minnesota Supreme Court decision from 1991, essentially saying that an employee under discrimination statutes cannot really bring a cause of action unless and until there's been substantial adverse action taken against them. And I think that's consistent with what the case law should be. Courts have been fairly reluctant to, at least in my experience, to accept claims unless and until there's been some substantial adverse action. In other words, if he would have brought the claim right away after September 6th or whatever, the courts would certainly be asking me, what was the adverse action that occurred, Mr. Sheik? Why didn't anything happen there? Aren't you talking about a retaliation claim here as opposed to what Judge Strauss asked you about, which is the hostile work environment? I think it relates back to the hostile work environment. I mean, I would agree with the court that's probably our weakest case or argument because of the sphere and pervasive element of the sexual harassment claim. But I do still believe that it's our position that a plaintiff cannot even bring a cause of action unless and until there's been some adverse action. And so I think that does relate back to the September 6th. So we can prove that there's been some adverse action, which arguably there wasn't any until January 3rd. It's our position that his claim was timely, and certainly the retaliation claim would be timely because the adverse action occurred on January 3rd, 2018. Well, I don't want to belabor this, but isn't in a hostile work environment claim, aren't the, I think it was new text and the name calling, wasn't that essentially the adverse action itself? And that's distinguishable from a retaliation claim where you report the sexual harassment and then there's an adverse action that gets taken. Maybe I'm wrong about that, but that's my memory of how Minnesota law works for my time on the Supreme Court. Sure. So, I mean, I'm not disagreeing with the court here, but certainly the courts have been more and more focusing on what adverse action has occurred. So, I mean, our firm won't really even take a case unless there's been a demotion, a reduction in pay, because the courts will consistently say, look, nothing's happened here. And certainly defense counsel in any kind of rebuttal letter to our letters indicates, hey, look at nothing adverse happened here. So you don't even have a claim here. So, I mean, our position is, is that the adverse that you can't even bring a claim until the adverse action actually occurs, which is January 3rd, 2018, which makes the claim timely. And it's our position. It certainly makes a claim for a retaliation timely for sure. Any other questions on that, Congressman? None for me. Okay. And basically it's our position that Mr. Lissick has denied any inappropriate conduct the whole time relating to the third incident that basically the lockout takeout procedures, which are 409 and 530, those procedures, I'd ask the court to look at those. And I'd ask the court specifically to look at appendix 530, which is the, that's the picture of the second floor. And basically the pedal stills on the left-hand side there. And that's the machine that the investigator indicated needed to be locked out takeout. And I, I mean, I went, we went round and round on this issue with the investigator. And it's our position that she started for Anderson in July of 17 and did this investigation approximately five months after that. So it's our position that she had very limited experience. And she even admitted that in her deposition testimony. And I had asked the court to kind of review 504 to 513, but basically I'm asking her why was he terminated? And she said that he violated not locking out the pedestal as opposed to the master control room, which is located on the first floor, which I be honest with you is about what is what I thought she was going to be testifying to, but she said, no, it was that. And then I went through the lockout takeout procedures, which are requirements of Anderson. We went round and round, but basically she said in the lockout takeout procedures, there is nothing in there that indicates that he has to lock out, take out that pedestal on the second floor of the number nine. So basically it's our position that, that the investigation was less than thorough. And I know council is going to say, isn't it just a good faith belief, but it's our position that, you know, this is similar to Jillio it's G I L O O L Y. And I'm sure I'm mispronouncing that, but anyways, it's our position that our case is similar to that case. And basically because the investigation was less than thorough and it's our position that was not made in good faith. And that they put somebody on this who didn't know very much about how the procedures worked and basically, and they are complicated procedures as far as reciprocal number nine, as you can't just walk in there and kind of understand what that, what happens on those lockout takeout procedures. Council, is this more, I just want to understand the argument you're making and where it, which, which part of the argument it relates to, which is my understanding is nobody is arguing that there wasn't a legitimate non-discriminatory reason. It sounds to me like the argument you're making is really about pretext that they conducted sort of a sham investigation and that therefore the termination was pretextual as a result of that investigation. Am I right about that? I would agree with that, your honor. I mean, I would like to focus on the pretext and I'm sure the court's aware that it's our position that the prima facie case for, you know, the Minnesota whistleblower act, the FMLA act and the sexual retaliation act that, you know, those are very relatively not very onerous on the plaintiff. And so I would like to, you know, focus on the pretext because, you know, it's our position that the investigation really was, as the court indicated, a sham. They put somebody in charge that didn't really know the rule and Fitzmorris signed off on, he knew about the sexual harassment, he knew about the eyewash situation. He knew about the FMLA request. And so he knew about all this. He signed the letter for termination, which is a 589 to 590, I do believe. I've asked the court to review those documents, but that's how we tie in together Fitzmorris as kind of the bad actor in this case. And basically he was part of the investigation, at least initially, and he stated that Lissick denied it all throughout the proceedings. So I would also just real quickly like to say that we've created a genuine issue material fact as far as whether or not that he violated the lockout TAYGO procedures. I mean, over and over again, cited in the brief with people who had actual knowledge of the situation stated that there were no lockout TAYGO procedures that mandated that pedestal be locked out. And even the court, the Honorable Judge Frank indicated that the procedures were fairly clear to anybody. So when I asked these individual employees, did this have to be locked out, and they all indicated no. And I think they were trying to anticipate what I was trying to get at, so we had to go back and forth and round and round as far as whether or not the lockout TAYGO were in fact violated. But they all indicated, at least four of them that worked there, that had knowledge of the lockout TAYGO procedures, that that was not required. And there's also a sign, and it's in a later part of the appendix, but there's also a sign that says, danger, lockout TAYGO, you know, you need to be, needs to be required after this point in time. So I've asked that the court focus on the, on the retaliation claims. And, you know, it's our position that there was a short period of time, you know, after the reporting of the sexual harassment case, that there was a short period of time before Mr. Lissick was, was standing. So it's our position that, you know, the first part, he was simply evaluating the machinery and going through all the machinery parts, and then that's when somebody walked by and indicated that there was an issue. So I've asked that the court focus on the, on the retaliation claims. And, you know, it's our position that there was a short period of time, you know, after the reporting of the sexual harassment, the reporting of the eyewash stations and the FMLA requests. It's our position that the FMLA requests were in fact instantaneously because it was intermittent. So, you know, when they terminated him, he was still in fact on FMLA. I want to ask you about that exact point, which gets the causation and the prima facie case of retaliation on each of the each one of these claims. And my understanding is, with the exception of the FMLA claim, which was ongoing, we can debate whether it begins at the beginning or the end, but it was ongoing, that there's a substantial time difference. And by substantial, I mean, not in layman's terms, but in terms of legal terms, right? We've said two months, maybe too long to create an inference of causation. Here on some of them we have four or six months. And so is there anything else to suggest that any of these whistleblower or any of the others, that those were the cause of the termination other than timing? Because remember, we have, in a lot of these cases, we have two later lockout violations. So I'm just trying to figure out what you have other than timing. Okay. I mean, so I agree with the court. I just note for the court's record that, you know, the courts, federal and state have been kind of all over the place as far as what's close enough in time. Certainly the Eighth Circuit's been a little bit more conservative, but it's the fact, you know, I'd like the court to focus on the fact that it's our position that the lockout takeout procedures were not violated. And so basically the credibility of that issue is in favor of Mr. Lissick, especially when you view the evidence in the light most favorable to him. And it's our position that they also indicated a little bit in their, at least their initial brief in district court, that there were some other issues with Mr. Lissick relating to throwing away trash and or looking at women inappropriately. And that's our position that they've now kind of shifted the reasons. So that's another reason. And there really wasn't a true independent investigation. I mean, I think it should, the investigation, in my opinion, should at least been conducted by Mr. Fitzmorris. And I think, you know, and this is a second kind of go around for Anderson, which is another decision that was cited by counsel. I believe it's Chinlander and I might be mispronouncing that, but it's in the brief anyways. And I've rebutted in the brief, essentially stating that, you know, the reasons for termination were not substantiated. And basically because of that, you know, the claims submitted by Mr. Lissick should go forward relating specifically to the whistleblower act, the FMLA act and the sexual retaliation act. I mean, all the employees basically knew about everything that was happening to Mr. Lissick and that's why it's our position that they retaliated against him. And Anderson had the prior case with Judge Frank. And, you know, I think it's a dangerous path to go down to as far as allowing the Anderson to conduct, you know, not thorough investigations. I see my time's up. I have nothing further unless the court has any inquiries. I do not. All right. Thank you for your argument. Mr. Will, you may proceed. I think you might still be muted. Can you hear? I can't. I think you may still be muted. Judge Kovacs, can you hear him? I cannot. It appears, Madam Clerk, that we were having trouble with the connection or perhaps he's muted. Mr. Will, can you hear me? This is Melissa in the courtroom. Can you hear me now? Yes, we can. Much better. Thank you. Are you able to hear me, Your Honors? Yes, we are. Very much so. Thank you. I apologize. I may please the court and counsel. My name is David Wilk. I represent Anderson Corporation in this appeal. And Judge Frank properly granted summary judgment on all of Mr. Lissick's then remaining claims, and he did so after the close of discovery. Judge Frank granted that motion because Mr. Lissick was unable to present evidence—we've heard about some of that already yet today—to substantiate any of his claims. He's appealed as to sexual harassment and as to various forms of retaliation, and I'll get to those, I think, in that order. But the undisputed evidence shows that Mr. Lissick was terminated because Anderson reasonably concluded that he violated lockout-tagout for a third time. The people primarily involved in that decision, including the investigator, did not know that Mr. Lissick had engaged in any protected activity. The person who assigned the investigator did not know that Mr. Lissick had engaged in any protected activity. So I turn briefly to sexual harassment, and the court has identified one of the issues, the statute of limitation issue. I think it's incorrect to say you can't bring a claim until you're terminated. That would suggest you could never bring a claim for sexual harassment if you're never terminated. That can't be the law. The law says you can bring a claim for sexual harassment when you've experienced conduct so severe or pervasive that it alters the terms and conditions of employment. That means adverse action has occurred, whether you've been terminated or not. That issue was resolved decades ago by the United States Supreme Court. So we first have a statute of limitations issue, which I think the court's highlighted in terms of the dates. The second issue is, is there any severe or pervasive activity? Mr. Lissick was called lipstick in a failed effort to be funny, apparently, and he also heard about but didn't see sexually explicit text messages. That is not enough to alter the terms and conditions of employment, and the fact that plaintiff's counsel concedes that he could not have brought a claim back in September of 2017 seems to me to admit as much. The third issue is, and the court has highlighted it already, Anderson's timely and appropriate response. Anderson took prompt remedial action. The person who called him lipstick was told not to do that again. Anderson investigated, investigated the text messages, learned that they were sent by a vendor's employee. That vendor was contacted and told in no uncertain terms, do not send him back, and they didn't. Problem solved. Exactly how the court envisions employers dealing with situations of this sort. So for any one of those three reasons, statute of limitations, lack of severe or pervasive activity, Anderson's timely and appropriate remedial action, the court can and should affirm. Next we have retaliation, and it comes in three different varieties, but all three involve the same defects. The three are FMLA. Judge Strauss has pointed out that there are some issues on timing on that. It's requested in approximately April. It's granted. He begins taking it in August, September, October. Then you have the iWatch station issue under the Minnesota Whistleblower Act. That is also in September of 2017. And then you have the report of sexual harassment. That portion of the Human Rights Act claim is not barred by the statute of limitations because the adverse employment action as to retaliation was in January, but the alleged sexual harassment itself started and ended more than one year prior to the lawsuit. So we look at the retaliation claims. They all share the same core problems. No prima facie case. No evidence of pretext. What are we talking about? We're talking about this machine. You've heard some about it. You've read a great deal about it. You've even seen pictures of it. Reciprocator number nine. The purpose of this machine is people take completed patio doors, put them on a large pallet, and put it on a conveyor belt. The conveyors roll into the elevator, drop down a floor, and it comes out a different set of conveyors. And that's from manufacturing on the second floor out to distribution or shipping on the first floor. Well, on January the 3rd, 2018, this machine is not functioning. It's not functioning, and one of the people in charge of it, Mr. Hartwick, is down on the first floor and he sees a red light on. Why is the red light important? The red light's important because it tells us there's power coming to the pedestal that holds the control panel. There's power coming to the machine. It's not locked out. The red light means an e-stop button has been activated or pushed. Someone has pushed the e-stop. Mr. Hartwick looks at it. It's a mushroom-shaped button, and he can see that the button on the first floor isn't activated, so he goes upstairs to the second floor. What's going on up there? He comes up to the second floor and he sees Mr. Burns. Mr. Burns is a loader. He's one of the people who puts finished patio doors on the conveyors. And he believes that Mr. Lissick should have been locked out with a physical lock. Mr. Burns is wrong about that, but he's wrong about it for the right reason. He's concerned about safety and he's concerned about Mr. Lissick. And he points to the pedestal. He points to it, and Mr. Hartwick sees him point to it. Hartwick looks at the pedestal, but he's not looking for a physical lock. He's looking for a light, and he sees one, which means there's still power coming to the second floor. And he sees Mr. Lissick with a chain guard removed and attempting to fix the chain. Now, I asked Mr. Lissick at his deposition on page 167 of the record, and I said, And we may not agree on much today, Mr. Lissick, but the one thing we agree on is that when you remove that chain guard, you have to be locked out, period. Answer, correct. So Mr. Hartwick knows this. He believes Mr. Lissick is out of bounds. He sees Lissick with a chain guard removed. He sees an elevator on the second floor, which means the very first step of lockout-tagout has not been achieved, and he sees a light on the pedestal. He reports it to Mr. Fitzmaurice, Lissick's boss. Fitzmaurice sends this to Mr. Weyer, his new boss. Weyer is new to this situation. He doesn't know about eyewash stations and text messages. He doesn't know about FMLA, and he sure doesn't know about the nickname Lipstick. He says, I've got a guy named Lissick on my team, and he's been spotted potentially violating lockout-tagout. Who's Mr. Lissick? And Mr. Weyer pulls Mr. Lissick's file, and he sees that Mr. Lissick has two prior violations. Two prior violations. So Mr. Weyer contacts his HR person, not the person who did the investigation in September about texts, a new one, a different one, because it's Weyer's HR person. Her name is Monique Romaine, and he asks her to investigate. And he says, if you conclude that he's done this for a third time, I'm going to recommend termination. He does that without knowing anything about alleged protected activity. Counsel, what about opposing counsel's point that this is a sham investigation, that this Monique was not experienced enough to understand what was going on here, and so it was basically a fraud. It was predetermined that this is how it was going to come out. And there's no evidence of that. That's an argument of counsel, but there's no evidence of that whatsoever. She has a master's degree in HR. She's done this for a good bit of time. She's conducted other investigations. Has she ever investigated re-sit number nine in a lockout? I don't believe so. But that's not the standard. The standard is not whether she conducted an investigation subjectively acceptable to Mr. Lissick or me or anybody else. The issue is, did she conduct a retaliatory investigation? Did she conduct an investigation with an eye toward retaliating? And the answer is no, and we know that from undisputed evidence, Your Honor, because she doesn't know to retaliate. She doesn't know there's whistleblowing that supposedly occurred. She doesn't know there's sexual harassment reporting that occurred. She doesn't know anything about FMLA by Mr. Lissick. She could not have retaliated if she wanted to. And I was surprised to hear counsel say, well, why didn't they have Fitzmorris investigate? He said that moments ago. Can you imagine if Fitzmorris had investigated? He's the one person who knows these things, and he's not involved in the investigation. And if he were involved, we would have heard a different argument about that. So I appreciate the argument about Shannon investigation. I understand that argument, but there's no evidence in this case. What that really reduces down to, I believe, Your Honor, is an argument that we disagree. We disagree with him, with her findings. But why disagree? He admits that the chain guard's off. He should be locked out. Hartwick reports seeing a red light. Hartwick reports seeing an elevator. He knows nothing about protected activity. He can't possibly be in on the sham if he wanted to be. And then when Mr. Lissick is confronted by it, Appendix 364, he writes, Evaluating machine did not lock out. E-stop. Why is that important? It explains that there was a time, even according to Mr. Lissick, when he only activated the E-stop. That explains his comment, Lissick's comment. It explains why Mr. Hartwick saw a red light. It explains why Ms. Romaine came to the unremarkable conclusion that he violated lockout tagout for a third time. Suppose, though, and I know you disagree with this, but suppose, though, that she's wrong. That there's some evidence in the record that he didn't actually violate lockout procedures. Would that change the case here, or do we defer to whatever the investigator finds? It would not change the case, Your Honor. The court, this court has held repeatedly, and Judge Frank applied this court's law, that the issue, and I'll cite a few of those cases, and the court, I'm sure, is familiar with them, but you have the Cormark case. The key question is not whether the stated basis for termination actually occurred, but whether the defendant believed it to have occurred. So what Mr. Lissick needs to show is not that Anderson was wrong. He needs to show that Anderson was wrong, and knew it was wrong, and did it anyway in order to retaliate. And he has no evidence of that. The McNary case, the relevant inquiry is not whether McNary actually violated company policy. And then last year, the Brookshire grocery case, the central question in determining if termination is proper is not whether the employee actually engaged in prohibited conduct, but whether the employer believed so in good faith. And so I don't agree with the premise that he didn't do it. It's likely he did, and it's likely that explains his comment in his own writing, but let's give him the benefit of that doubt under the standard, Your Honor. Let's give him the benefit of that doubt, because he does deny it under oath. It's not relevant. It's not relevant unless he can go steps beyond that and show that Anderson was not in good faith, or Anderson knew he didn't do it, and that is Anderson's pretext. Simply saying you didn't do it tees up the pretext argument, but it doesn't accomplish the pretext argument. And so our view is, no, a prima facie case exactly as Judge Frank found. No prima facie case, no causal connection. You need more than timing. In this case, you have less than timing. How on earth do you have less than timing, you wonder? You have less than timing in this case because Mr. Lissick violated lockout tagout and admitted doing so at the end of September after the protected activity. If Anderson was out to get him, and if Fitzmaurice was out to get him, they would not have failed to do it at the end of September, immediately after his protected activity. So we have less than timing in this case, not more. No prima facie case. The court declines to reach that question. You have a legitimate non-retaliatory reason for termination, and you have no evidence of pretext, none. Not a sham investigation, not a cat's paw, not arguing with the investigator, not simply denying the conduct. None of that does, none of that carries you past the burden under this court's decision that Judge Frank carefully applied. And with that, I will sit down and listen to the remainder of the argument. Thank you very much. Thank you, Mr. Wilk. Madam Clerk, my understanding is that Mr. Sheik does not have any rebuttal time remaining. Is that correct? That is correct, Your Honor. Mr. Sheik, if you have something burning you would like to say, I'm willing to add 30 seconds of time, but feel free to rest on what you've said already. All right, we will assume that Mr. Sheik does not want any additional time. So thanks to both counsel for your argument. Oh, there you are, Mr. Sheik. Did you want to take another 30 seconds to respond? No, I'm good, Your Honor. Thank you. Thank you. Thanks to both counsel for their arguments. The case is submitted and an opinion will be issued in due course. Thank you.